## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAKIM BRYANT,

                *Plaintiff,*

    v.

MICHAEL COLLINS, *et al.*,

                *Defendants.*

CIVIL ACTION
NO. 15-00302

**PAPPERT, J.**                                            **April 13, 2017**

### MEMORANDUM

Acting on information provided to them by fellow Philadelphia Police Officer Christopher Hulmes, Officers Michael Collins and Miguel Santiago arrested Hakim Bryant in a neighborhood known to police as a high drug crime area. Bryant was charged with possession and possession with intent to deliver a controlled substance. After spending forty-two days in jail, the charges were dismissed. Bryant then sued Collins, Santiago and others, alleging that they violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Bryant also brings federal law claims for false arrest, false imprisonment and malicious prosecution as well as state law assault and battery claims. Collins and Santiago, the only remaining defendants in the case, filed a motion for summary judgment, which the Court grants.

### I.

On June 11, 2014, Officers Christopher Hulmes and McCauley[1] were investigating drug sales in the area of Rosehill and Somerset Streets in Philadelphia.

---

[1] McCauley's first name is absent from the Investigation Report.

1

(Defendants' Statement of Material Facts ("DSMF") ¶ 1, ECF No. 63-1; Plaintiff's

Statement of Material Facts ("PSMF") ¶¶ 1–2, 5, ECF No. 64-1; Philadelphia Police

Department Investigation Report ("Investigation Report"), Ex. A at 2, ECF No. 63.)

Officers Collins and Santiago were also in the area, assisting Hulmes and McCauley as

"backup." (DSMF ¶ 2; PSMF ¶¶ 1, 4; Collins Dep. 10:2–6, Ex. B, ECF No. 63; Santiago

Dep. 6:22–7:9, Ex. C, ECF No. 63.) The neighborhood where the investigation took

place is known to police as a high crime area, particularly with regard to the buying

and selling of illegal drugs. (DSMF ¶ 3; Collins Dep. 10:11–21; Santiago Dep. 33:1–5.)

## A.

Hulmes and McCauley witnessed an Hispanic female later identified as Genesis

Then ("Genesis") remove a white bundle from her chest area. (DSMF ¶ 5; Investigation

Report 2–3.) They then watched as a white male later identified as Michael Luscuskie

and a white female later identified as Jordan Toff handed money to Genesis. (DSMF ¶

6; Investigation Report at 2–3.) In return, Genesis handed Luscuskie and Toff the

white object. (DSMF ¶ 7; Investigation Report at 2–3.) Hulmes and McCauley believed

that they had witnessed a drug transaction. (DSMF ¶ 8; Investigation Report at 2–3.)

Bryant arrived at the scene in a grey Ford Fusion, which he had rented from

AVIS. (DSMF ¶¶ 9–10; Bryant Dep. 19:6–8, ECF No. 45–5.) Hulmes observed Bryant

speak with Genesis and say "that's a [sic] unmarked police car," in reference to Hulmes

and McCauley's car. (DSMF ¶ 11; PSMF ¶ 6; Investigation Report at 2–3.) Bryant

disputes that he spoke with Genesis. (Bryant Dep. 44:2–12, 79:4–10, 91:5–20, 100:11–

101:5) Genesis looked at the officers' car and fled. (DSMF ¶ 12; Investigation Report at

2–3.) Hulmes radioed the descriptions of Genesis, Luscuskie, Toff and Bryant to the

backup officers, including Collins and Santiago.  (DSMF ¶ 13; Collins Dep. 15:5–10; Santiago Dep. 10:5–13.)  Hulmes specifically noted that Bryant was a known seller of narcotics.  (DSMF ¶ 13; Collins Dep. 15:5–10; Santiago Dep. 10:5–13.)

Genesis threw her purse on a nearby garage roof while running from the officers. (DSMF ¶ 14; Investigation Report at 2–3.)  She was caught with $63 on her.  (DSMF ¶ 16; Investigation Report at 2–3.)  Her purse, containing two bundles of heroin, was later recovered.  (DSMF ¶ 15; Investigation Report at 2–3; Property Receipt No. 3158686, Ex. E, ECF No. 63.)  Luscuskie and Toff, among others, were also captured with heroin in their possession.  (DSMF ¶¶ 17–18, 20; Investigation Report 2–3; Property Receipt No. 3158684, Ex. F, ECF No. 63; Property Receipt No. 3158683, Ex. G, ECF No. 63.) Santiago arrested Toff.  (DSMF ¶ 19, Investigation Report at 2–3.)

Based on the information received from Hulmes, Santiago identified Bryant's car and pulled it over.  (DSMF ¶ 21; Santiago Dep. 9:23–10:13.)  Santiago believed Bryant was involved in the drug transaction given the information Hulmes radioed to him and his discovery of heroin on Toff during her arrest.  (DSMF ¶ 22; Santiago Dep. 39:1–17.) Santiago radioed to other officers that he pulled over Bryant's car.  (DSMF ¶ 23; Collins Dep. 16:14–18.)  Collins heard the transmission and arrived at the scene to assist Santiago.  (DSMF ¶ 24; Collins Dep. 17:3–18.)  Collins searched Bryant and recovered $100, but no drugs were discovered on his person or in his car.  (DSMF ¶ 25; PSMF ¶¶ 8, 12; Collins Dep. 28:12–24; Property Receipt No. 3158685, Ex. H, ECF No. 63.)

Collins handcuffed Bryant, placed him in the back of his police car and took him to the Episcopal Hospital parking lot, a secure area where officers searched the suspects and shared information.  (DSMF ¶¶ 27–28; PSMF ¶ 7; Collins Dep. 19:7–12,

28:5–11; Santiago Dep. 13:8–18; Bryant Dep. 37:12–15.) Bryant alleges that Collins slammed him against his police car before putting him inside, something which Collins denies. (Bryant Dep. 13:12–22, 21:15–24; Collins Dep. 33:22–34:14, 36:8–18.) Bryant also claims that following his arrest, the police hid his car, causing him to incur late fees from AVIS. (Bryant Dep. 45:1–8, 71:23–72:2, 80:15–24.) Collins and Santiago testified that they do not know what happened to the car. (Collins Dep. 29:24–31:1, Santiago Dep. 14:22–15:7.)

Hulmes later identified all suspects transported to the secure area. (DSMF ¶ 29; PSMF ¶ 9–11; Investigation Report at 2–3.) An officer brought Bryant to the Police Detention Unit at 8th and Race Streets and he was later charged with possession of a controlled substance and possession with intent to deliver a controlled substance. (DSMF ¶ 30; PSMF ¶ 13; Collins Dep. 39:5–11; Bryant Docket Sheet at 2, ECF No. 45-2.) Bryant complained to the officers about a pre-existing back injury, and the officers took him to the hospital. (Bryant Dep. 52:21–557:5.) Bryant claims that while at the hospital Santiago slammed him around. (Bryant Dep. 30:21–31:5.) Santiago denies doing so. (Santiago Dep. 27:5–28:5; 30:1–31:20.) Bryant complained to a nurse that the officers injured him. (PSMF ¶ 14; Collins Dep. 40:6–10.)

On or about June 12, 2014, Bryant was preliminarily arraigned in Philadelphia Municipal Court. (PSMF ¶ 15; Bryant Docket Sheet at 2, 4.) The court dismissed all charges against Bryant for lack of evidence on July 23, 2014. (PSMF ¶¶ 23–24; Bryant Docket Sheet at 5.) Bryant spent forty-two days in jail before he was released. (Bryant Dep. 74:18–21.)

**B.**

Bryant filed his initial complaint *pro se* against Collins, Santiago and Officer Derrick Jones ("Jones") on February 5, 2015. (ECF No. 4.) On April 30, 2015, Bryant filed an amended complaint adding Hulmes as a defendant. (ECF No. 5.) After Bryant obtained counsel on August 5, 2015, the Court gave him leave to file a second amended complaint. He did so on November 2, 2015, adding as defendants the City of Philadelphia ("the City"), Sergeant Guilian, Sergeant DiDonato, Patrick Banning, James Reilly, Joseph McCloskey, Robert Otto and John and Jane Does 1–15. (ECF Nos. 15, 23, 26.)

The Court granted Bryant leave to file a third amended complaint on March 25, 2016 in which he removed Otto and John and Jane Does 1–15 as defendants. (ECF Nos. 36, 37.) The complaint alleged the following claims: (1) RICO violations against Collins, Santiago, Hulmes, Guilian, DiDonato, Banning, Reilly, McCloskey; (2) assault and battery under state law against Collins, Santiago and the City; (3) false arrest under 42 U.S.C. Section 1983 against Collins, Santiago, Hulmes, Banning, Reilly and the City; (4) false imprisonment under Section 1983 against Collins, Santiago, Hulmes, Guilian, DiDonato, Banning and the City; (5) malicious prosecution under Section 1983 against Collins, Santiago, Hulmes, Guilian, DiDonato, Banning, Reilly and the City;[2] and (6) intentional infliction of emotional distress ("IIED") against Collins, Santiago,

---

[2] While it is unclear from the third amended complaint whether the counts for false arrest, false imprisonment and malicious prosecution are brought under state or federal law, (Pl.'s Third Am. Compl. ¶¶ 69–91), the Court construes them as federal law claims in accordance with Bryant's counsel's request at oral argument. (Oral Arg. 45:24–46:1, ECF No. 47.)

Hulmes, Guilian, DiDonato, Banning, Reilly and McCloskey.[3] (Pl.'s Third Am. Compl. ¶¶ 52, 68, 75, 83, 91, 101, ECF No. 37.)

On April 8, 2016, the parties stipulated to the dismissal of Jones, Guilian and McCloskey. (ECF No. 41.) Also that day, the City filed a motion to dismiss on behalf of the City, Collins, Santiago, Hulmes, DiDonato, Banning and Reilly. (ECF No. 40.) Bryant responded on May 8, 2016. (ECF No. 42.) Before the Court ruled on the motion to dismiss, the City filed a motion for summary judgment on behalf of the same defendants. (ECF No. 43.) Bryant responded on May 31, 2016. (ECF No. 45.) On June 15, 2016, the Court held oral argument on both the motion to dismiss and the motion for summary judgment. (ECF No. 47.)[4] The Court granted the motion to dismiss as to the City, DiDonato, Banning and Reilly and denied the remainder of the motion as moot. (ECF No. 46; Oral Arg. 7:11–13.) This left Collins, Santiago and Hulmes as the remaining defendants in the case.

Around this time, it became apparent that Hulmes had never been properly served pursuant to Federal Rule of Civil Procedure 4(m). (ECF No. 53.) The Court held a hearing on June 29, 2016 to discuss the proper course of action and, the same day, directed Bryant's counsel to serve Hulmes by September 27, 2016. (ECF Nos. 52 & 53.) Counsel was unable to do so and, in a telephone conference on October 3, 2016, detailed his extensive but unsuccessful efforts to locate and serve Hulmes. (ECF No. 55.) Counsel requested and received more time to serve Hulmes by publication. (*Id.*) In a telephone conference on November 30, 2016, Bryant's attorney stated that he not only

---

[3] Bryant conceded his IIED claim at oral argument. (Oral Arg. 71:11–14.)

[4] Because the motion for summary judgment currently before the Court is the same in substance as that which was argued on June 15, *see infra* n.5, the Court cites the transcript of this oral argument where relevant.

remained unable to find Hulmes, he was now having trouble locating his own client, who had been convicted of a felony in an unrelated matter and become a fugutive. (ECF No. 59.)  Counsel requested 30 more days to try to contact his client and obtain the requisite funds to effectuate service by publication.  The Court again granted his request.  In a January 10, 2017 telephone conference, counsel reported that both Hulmes and Bryant remained elusive, though he had managed to speak with Bryant through social media, who told counsel that he would not pay for any efforts to serve Hulmes.  (ECF No. 60.)

On January 23, 2017, the Court directed the City to refile its motion for summary judgment on behalf of Collins and Santiago, (ECF No. 62), and the City did so on January 31, 2017.  (ECF No. 63.)[5]  Bryant responded on February 6, 2017.  (ECF No. 64.)  The City moves for summary judgment on all remaining counts against Collins and Santiago: RICO, false arrest, false imprisonment, malicious prosecution and assault and battery.  (Defs.' Mot. for Summ. J. at 1, ECF No. 63.)

## II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a

---

[5] Though the Court never resolved Defendants' first motion for summary judgment, (ECF No. 43), it ceased to appear as pending in the ECF database.  The Court directed the parties to resubmit their respective filings.  (ECF No. 62.)  Though the more recent filings have been updated to exclude arguments relevant to defendants that have already been dismissed, the arguments pertaining to Bryant's claims against Collins and Santiago are identical to those in the previously filed motion for summary judgment and response.  *See* (ECF Nos. 63 & 64).

reasonable factfinder to find for the plaintiff.  *Id.* at 252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*

When ruling on a motion for summary judgment, the Court may only rely on admissible evidence.  *See, e.g.*, *Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 95 (3d Cir. 1999).  A Court must view the facts and draw all reasonable inferences in favor of the nonmoving party.  *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

Rule 56 "requires the nonmoving party to go beyond the pleadings."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also* FED. R. CIV. P. 56(e).  "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  FED. R. CIV. P. 56(e) advisory notes on the 1963 Amendment.  At this stage of the proceedings, Bryant cannot rely on his pleadings alone, but instead must point to record evidence to support his claims.

## III.

### A.

#### i.

A plaintiff must first establish that he has standing pursuant to 18 U.S.C. Section 1964(c) to bring a civil RICO claim by showing that: (1) he suffered an injury to his "business or property" and (2) his injury was proximately caused by the defendant's

violation of Section 1962. *See Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 424 (E.D. Pa. 2014), *aff'd*, 625 F. App'x 594 (3d Cir. 2016); *see also Magnum v. Archdiocese of Phila.*, 253 F. App'x 224, 226 (3d Cir. 2007); *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

Plaintiff's injury to his business or property must be alleged "with some certainty; if the claimed injury is speculative, it is not ripe for adjudication." *Johnson v. Heimbach*, No. 03-2483, 2003 WL 22838476, at *4 (E.D. Pa. Nov. 25, 2003), *aff'd*, 112 F. App'x 866 (3d Cir. 2004). "[A] showing of injury requires proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio*, 221 F.3d at 483 (citation and internal quotations omitted). Specifically, "the injury to business or property element of section 1964(c) can be satisfied by allegations and proof of actual monetary loss, *i.e.*, an out-of-pocket loss." *Id.* Consumers who have been "'deprived of only money, albeit a modest amount,' have sustained a 'property' injury." *Id.* at 484 (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 340 (1979)).

The Court interprets Bryant's claim to be that he has standing because he suffered injury to property in the form of rental car late fees proximately caused by Collins and Santiago's unlawfully arresting him and hiding his car.[6] Bryant asserts that this caused him to incur $5,000 in charges from AVIS. (Bryant Dep. 62:4–8.) He has therefore asserted that Collins and Santiago caused him to suffer a concrete "out-of-pocket loss" and that loss formed an injury to his property for purposes under Section 1964(c). *See Maio*, 221 F.3d at 483.

---

[6]     In his response, Bryant also argued that he suffered financial injury because the officers confiscated $100 from him at the time of his arrest. (Pl.'s Resp., at 9, ECF No. 64) However, at his deposition, Bryant testified that the money was later returned to him and, at the hearing, Bryant's attorney conceded this argument. *See* (Oral Arg. 47:6–7; Bryant Dep. 31:6–14).

Bryant must also show that Collins and Santiago's predicate acts, *i.e.*, some or all of the activities comprising the alleged RICO violation, were the proximate cause of his injury. *See Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir. 1987). "[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Moreover, "the injury which confers standing on a RICO plaintiff is injury flowing from the commission of the predicate act, not injury flowing from the pattern of such acts." *Town of Kearny*, 829 F.2d at 1268 (citation omitted). The proximate cause element of standing is therefore satisfied "so long as one [predicate] act injures the plaintiff." *Schwartz v. Lawyers Title Ins. Co.*, 970 F. Supp. 2d 395, 407 (E.D. Pa. 2013) (citation and internal quotations omitted).

Bryant alleges that the police hid his rental car following his arrest which caused him to incur out of pocket expenses for late fees and towing charges. (Bryant Dep. 62:4–22, 80:10–24.) Collins and Santiago denied doing so. (Collins Dep. 29:24–31:1, Santiago Dep. 14:22–15:7.) Given that a genuine dispute of material fact exists as to whether this occurred, the Court cannot conclude as a matter of law that Bryant lacks standing under Section 1964(c).

### ii.

Bryant fails, however, to satisfy the substantive elements of a civil RICO claim. A civil RICO claim "require[s] a showing that a defendant conducted, or conspired to conduct, an enterprise through a pattern of racketeering activity, and that this activity was the proximate cause of an injury to the plaintiff's 'business or property.'"

*CollegeSource, Inc. v. Academy One, Inc.*, 597 F. App'x 116, 125 (3d Cir. 2015) (citing 18 U.S.C. §§ 1962(c) and 1964(c)).  The RICO statute is to be "read broadly." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985).  Bryant claims that Collins and Santiago violated 18 U.S.C. Section 1962(b).  (Pl.'s Third Am. Compl. ¶¶ 110–14.)  The Court interprets Bryant's allegation as a violation under 18 U.S.C. Section 1962(c) and will analyze his claim accordingly.[7]  Section 1962(c) states, in pertinent part, that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To prevail on a claim under Section 1962(c), a plaintiff must prove that a "'person' employed by or associated with an enterprise engaged in the following: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Levine v. First Am. Title Ins. Co.*, 682 F. Supp. 2d 442, 456 (E.D. Pa. 2010) (quoting *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 364 (3d Cir. 2003)).

### 1.

The existence of an "enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other."  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 367 (3d Cir. 2010) (internal citations and quotations omitted).  The operative inquiry is "whether the alleged 'enterprise' is distinct from the alleged 'pattern of activity in which it engages'—so long as it is

---

[7]  A Section 1962(b) claim requires a plaintiff to show "injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993) (citations omitted).  Bryant has not alleged that Defendants acquired any interest in a RICO enterprise through a pattern of racketeering.

distinct, and otherwise meets the broad statutory definition of 'enterprise,' it may be comprised only of defendants, or of defendants and non-defendants." *United States v. Urban*, 404 F.3d 754, 782 (3d Cir. 2005). A RICO enterprise can include "organizations such as corporations and partnerships, and other legal entities" or "any union or group of individuals associated in fact although not a legal entity." *United States v. Turkette*, 452 U.S. 576, 582 (1981) (citing 18 U.S.C. § 1961(4)) (internal quotations omitted).

A nonlegal or association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Id.* at 583. An association-in-fact enterprise is proven by showing that: (1) there exists an ongoing organization, formal or informal; (2) the various associates of the organization function as a continuing unit; and (3) the organization has an existence separate and apart from the alleged pattern of racketeering activity. *See id.* The enterprise must also "have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

Bryant asserts that Collins and Santiago, along with other members of the Philadelphia Police Department, "were associated as [a] group, who met and assembled via their shared employment through the City of Philadelphia and its entity the Philadelphia Police Department." (Pl.'s Third Am. Compl. ¶ 52.) Because he does not assert that Collins and Santiago were a legal entity unto themselves, the Court addresses Bryant's claims under an association-in-fact theory.

The alleged purpose of the enterprise's existence was to "commit crimes, violate citizens' rights, and earn unjustified money from the City of Philadelphia and the

Philadelphia Police Department." (*Id.*)  Bryant's counsel stated at oral argument that "the enterprise started on June 11th, 2014" and "July 23rd[, 2014] . . . was the day that the enterprise ended." (Oral Arg. 61:5–8.)  Even if the court accepts Bryant's alleged purpose for the enterprise and that a relationship existed among the defendants, an enterprise that existed for only forty-three days for the sole purpose of violating Bryant's rights is insufficient to satisfy the longevity requirement for a RICO enterprise. *See, e.g.*, *Ouwinga v. Benistar 419 Plan Servs.*, Inc., 694 F.3d 783, 795 (6th Cir. 2012) (holding that an allegation that "the enterprise functioned [for] at least five years" satisfied the longevity element); *United States v. Harris*, 695 F.3d 1125, 1136 (10th Cir. 2012) (holding that a "pattern of activity that . . . continued over a period of years" satisfied longevity element); *CIT Grp. / Equip. Fin., Inc. v. Krones, Inc.*, No. 9-cv-432, 2009 WL 3579037, at *9 (W.D. Pa. Sept. 16, 2009) (holding that "a period of 18 months" was sufficient for the longevity element).

Bryant has also failed to show that the alleged enterprise "is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. The formation and dissolution of the alleged enterprise aligns perfectly with the day that Bryant was arrested and the day the charges against him were dropped.  (Oral Arg. 61:4–7.) ("[The] day that Mr. Bryant was arrested was the first day, and July 23rd, the day Mr. Bryant . . . had the charges dismissed against him was the day that the enterprise ended.")  Therefore, no distinction between the enterprise's existence and the pattern of racketeering has been shown, and the *Turkette* requirement is not satisfied. *See United States v. Console*, 13 F.3d 641, 652 (3d Cir. 1993) (noting that an enterprise must have "an existence beyond that which is necessary merely to commit each of the

acts charged as predicated racketeering offenses") (internal quotations and citations omitted).

**2.**

Bryant also fails to show that Collins and Santiago engaged in a pattern of racketeering. Such a pattern consists of "at least two acts of racketeering activity" that are related and amount to, or pose a threat of, continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237 (1989); *see also Hindes v. Castle*, 937 F.2d 868, 872 (3d Cir. 1991) ("To be considered a pattern, predicate criminal acts must be related and amount to, or . . . otherwise constitute a threat of, continuing criminal activity. Predicate acts are sufficiently related when they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." (internal quotations and citations omitted)). "Racketeering activity" means "any act or threat involving" specified state-law crimes, any "act" indictable under specified federal statutes and certain federal "offenses." *See* 18 U.S.C. § 1961(1). Though it is not entirely clear, Bryant appears to argue that the officers' actions constituted racketeering activity because their fabrication of evidence against him was fraudulent and resulted in mail fraud because the "Philadelphia Court System created mailings based on this fraud and mailed them via the United States Postal Service." (Pl.'s Resp., at 10–11, ECF No. 64.) At the risk of understatement, this seems attenuated. Even assuming that the officers' alleged actions could constitute racketeering activity under one of the enumerated sections, such as acts relating to the obstruction of justice, *see* (Bryant Dep. 132:33–134:15), Bryant's claim still fails for a number of reasons.

A plaintiff must also show that the pattern of racketeering activity had "continuity," a temporal requirement that can be met by showing either a "closed-ended" or "open-ended" scheme. *Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594, 609–10 (3d Cir. 1991) (quoting *H.J. Inc.*, 492 U.S. at 241–42). A closed-ended scheme requires proof of a "series of related predicates lasting a 'substantial period of time.'" *Id.* An open-ended scheme requires proof of a "threat of continuity." *Id.* Since Bryant claims that the enterprise ended on July 23, 2014, *see* (Oral Arg. 61:5–8), there can be no threat of continuity and the Court therefore analyzes his claim under a closed-ended theory.

"If a plaintiff alleges a RICO violation over a closed period ('closed-ended' scheme), [he] must prove a series of related predicates lasting a 'substantial period of time.'" *Hughes*, 945 F.2d at 609 (quoting *H.J. Inc.*, 492 U.S. at 242). "Related predicate acts lasting a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Hindes*, 937 F.2d at 872. The Third Circuit Court of Appeals has stated that "twelve months is not a substantial period of time." *Stoss v. Singer Fin. Corp.*, No. 08-cv-5968, 2010 WL 678115, at *7 (E.D. Pa. Feb. 24, 2010) (citing *Hughes*, 945 F.2d at 611). Further, where "the fraudulent activity . . . is directed at a single entity . . . or can generally be characterized as a single-scheme, single-victim transaction, there is no pattern of racketeering activity." *Id.* (internal quotations and citations omitted). Other decisions have also indicated that significantly more time than forty-three days is required for a pattern of racketeering activity to be found. *See, e.g.*, *H.J. Inc.*, 492 U.S. at 250 (holding "racketeering predicates [that] occurred with some frequency over at least a 6–year period" were a sufficient duration); *Kehr*

*Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1418 (3d Cir. 1991) (holding an "eight-month period of fraudulent activity does not constitute a pattern" of racketeering activity).

Bryant contends the enterprise lasted for only forty-three days and that he was the enterprise's only victim. The record fails to show a pattern of racketeering activity because Bryant cannot satisfy the requirement that the closed-ended scheme lasted for a "substantial period of time" and because his claim is "a single-scheme, single-victim transaction," which is not sufficient. *Stoss*, 2010 WL 678115, at *7. Bryant has failed to create a material issue of fact for trial, entitling Collins and Santiago to summary judgment on the RICO claim.

**B.**

**i.**

Bryant's false arrest and false imprisonment claims against Collins and Santiago also fail. False arrest and false imprisonment are analyzed together because they are "essentially the same claim." *Olener v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999). In order to set forth a claim for false arrest, Bryant must show that: (1) he has been arrested or restrained, (2) without adequate legal justification (probable cause). *Gilbert v. Feld*, 788 F. Supp. 854, 862 (E.D.Pa. 1992). "To determine whether an arrest is valid, we look to the law of the state where the arrest took place. Under Pennsylvania law, police officers can execute warrantless arrests for felonies and any grade of theft and attempted theft. An arrest by a law enforcement officer without a warrant is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Wright v. City of*

*Philadelphia*, 409 F.3d 595, 601 (3d Cir. 2005) (internal quotations and citations omitted).

Thus, the proper inquiry in a false arrest claim is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Paszkowski v. Roxbury Twp. Police Dep't*, 581 F. App'x 149, 152 (3d Cir. 2014) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988)). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482–83 (3d Cir. 1995) (citing *United States v. Glasser*, 750 F.2d 1197, 1205 (3d Cir. 1984)). Rather, "[p]robable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *Paszkowski*, 581 F. App'x at 152 (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)); *see also Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause only requires a "fair probability" that a person committed the relevant crime). "In determining whether probable cause exists, the court should assess whether the objective facts available to the arresting officers at the time of the arrest were sufficient to justify a reasonable belief that an offense had been committed. Courts apply a common sense approach based on the totality of the circumstances." *Hughes v. Shestakov*, No. 00-6054, 2002 WL 1742666, at *2 (E.D. Pa. July 22, 2002), *aff'd*, 76 F. App'x 450 (3d Cir. 2003) (citing *Sharrar v. Felsing*, 128 F.3d 810, 817 (3d Cir. 1997); *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000)).

Here, Collins and Santiago were relying on statements made to them by Hulmes. The Third Circuit has held that "statements by fellow officers conveying that there is probable cause for a person's arrest, by themselves, cannot provide the 'facts and circumstances' necessary to support a finding of probable cause." *Ciardiello v. Sexton*, 390 F. App'x 193, 199–200 (3d Cir. 2010) (quoting *Rogers v. Powell*, 120 F.3d 446, 453 (3d Cir. 1997)). Rather, "[p]robable cause exists only if the statements made by fellow officers are supported by actual facts that satisfy the probable cause standard." *Id.* (quoting *Rogers*, 120 F.3d at 453). Thus, "an officer can lawfully act solely on the basis of statements issued by fellow officers if the officers issuing the statements possessed the facts and circumstances necessary to support a finding of the requisite basis." *Id.* (quoting *Rogers*, 120 F.3d at 453. "If the officer making the statement lacked the requisite knowledge to establish probable cause, the arrest is unlawful." *Id.*

Bryant's arrest was therefore lawful if the officer making the statements, Hulmes, had the requisite knowledge to establish probable cause. Both Collins and Santiago testified that Hulmes, as the designated surveillance officer, personally observed the narcotics transaction and communicated those observations to them and the other officers involved via radio. (Collins Dep. 15:5–16:18, 27:5–13; Santiago Dep. 6:22–8:11.) Specifically, Santiago testified that Hulmes was "communicating over radio buyers, people that were involved in narcotics activity, along with other individuals who happened to be sellers in the area of where I was." (Santiago Dep. 8:8–11.) Hulmes then communicated a description of Bryant, his vehicle, his location and the direction he was driving and instructed the officers to stop the vehicle. (Collins Dep. 13:10–16:24; Santiago Dep. 7:4–10:16.) Hulmes's observations are memorialized in

great detail in the investigation report.  (Investigation Report, at 2–3); *see also supra* Section I.A.  Nothing in the record suggests that Hulmes's observations of the facts and circumstances were insufficient to justify a reasonable belief that Bryant had committed an offense.

## ii.

Even if a genuine issue of fact still exists as to whether Hulmes had the knowledge required to establish probable cause to arrest Bryant, Collins and Santiago are entitled to qualified immunity because they reasonably relied on Hulmes's directions to effectuate the arrest.[8]  "[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed."  *Rogers*, 120 F.3d at 455.

In this context, it was objectively reasonable for Collins and Santiago to believe that probable cause existed.  Both Collins and Santiago have extensive experience working on the narcotics strike team.  (Collins Dep. 60:22–65:9; Santiago Dep. 32:15–33:22.)  Since they joined the narcotics team around 2000, both officers have participated in thousands of operations of this same kind.  *See* (Collins Dep. 13:10–16:24; Santiago Dep. 7:4–10:16.)  The operations are structured: one or more plainclothes officers are in charge of surveying the targeted area, attempting to observe narcotics transactions and, if they observe sufficient evidence of such a transaction, relaying relevant information about the suspects to the rest of the team.  Meanwhile,

---

[8] While the City's motion does not argue that Collins and Santiago are entitled to qualified immunity, its answer to Bryant's complaint asserts it as an affirmative defense.  (ECF No. 6 at 4.)

others are uniform backup officers in marked patrol cars ready to receive the transmitted information and, if instructed, attempt to locate and stop the suspects based on the surveillance officer's description.  (Collins Dep., 15:5–16:24; Santiago Dep. 6:22–8:11.)

Collins and Santiago were working as back up officers and knew that Hulmes was the designated surveillance officer leading the investigation.  It was reasonable for them to believe that Hulmes was personally observing the alleged transaction both because that was his function by design and because he was communicating those observations to them in real time over the radio.  (Collins Dep. 15:5–16:18, 27:5–13; Santiago Dep. 6:22–8:11.)  And by virtue of Hulmes instructing Collins, Santiago and other officers to locate and arrest Bryant, it was reasonable for them to believe that, based on Hulmes's observations, probable cause existed to believe Bryant committed an offense.  In fact, Santiago had previously arrested several other persons, based on Hulmes's directions, who were found in possession of narcotics in the same area and on the same day that Bryant was arrested.  (Collins Dep. 19:24–20:10, 27:10–28:11; Santiago Dep. 7:18–8:17, 12:10–13.)  There is no record evidence that it was objectively unreasonable for Collins and Santiago to rely on Hulmes's statements to arrest Bryant.  Collins and Santiago are therefore entitled to qualified immunity from liability for false arrest and false imprisonment.  *Rogers*, 120 F.3d at 455.

### C.

Bryant's claim for malicious prosecution similarly fails.  The Court analyzes that claim under the Fourth Amendment as it arises from his arrest and imprisonment.  "To prove malicious prosecution under section 1983 when the claim is under the Fourth

Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).  Bryant has satisfied elements two and five by having the charges against him dismissed for lack of evidence and spending forty-two days in jail.  (PSMF ¶¶ 23–24; Bryant Docket Sheet at 5; Bryant Dep. 74:18–21.)

The malicious prosecution claim, however, fails because Collins and Santiago did not initiate criminal proceedings against Bryant.  "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Brockington v. City of Philadelphia*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005).  Bryant alleges in his complaint that:

> Defendants Reilly, Banning, DiDonato, Guilan, Hulmes, Santiago, and Collins, but especially Hulmes who was the investigating and observing Defendant, fabricated evidence against Plaintiff to attempt to substantiate falsely based probable cause for an arrest and prosecution which each Defendant knew did not exist and used this fake probable cause as a means to appear legitimate while illegally removing property from Mr. Bryant's person and prosecuting him.

(Pl.'s Third Am. Compl. ¶ 86.)  Aside from the complaint's allegation, Bryant has produced no evidence that Collins or Santiago fabricated evidence or provided false

information to a prosecutor.  Bryant therefore cannot satisfy the first element of malicious prosecution.

## D.

Pursuant to 28 U.S.C. Section 1367(c)(3), the Court has discretion to decline to exercise supplemental jurisdiction over state law claims once it has dismissed all claims over which it has original jurisdiction.  The Court does so here.

An appropriate order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.